Hello, Mr. Turner. How are you? Are you able to hear me? Yes, yes. Okay, we're calling United States v. Couto-Aguirre. Are you ready to argue? Yes, yes. Okay, you're the appellant, or you're representing the appellant, so you go first. Okay, should I make my appearance? We have in the courtroom, we have Mr. Kumra here in the courtroom. Okay, and I'll just make my appearance. Paul Turner appearing on behalf of Josue Couto-Aguirre, the appellant. Okay, you may proceed. Well, I can see that you're running long, so my opening remarks will be short. Basically, the appeal obviously brings into issue the district court's decision or discretion on whether or not to apply the minor rule adjustment in this case. Raised by my appeal, we have urged this court to find that the court, the district court, used extrinsic evidence, if you will, or evidence that was not before the court, to draw that conclusion and conclude that a minor rule should not be imposed, and specifically that the court improperly relied upon expert testimony in another case, as well as its own conclusions by driving in a car with things in the tires that they would know or should have known or had been on notice. Well, the judge said, he mentioned the experts that he had heard in another case, but then he said he was not relying on the expert testimony, and then he goes on to say something about how he wouldn't, with that much weight in the tires, the defendant would have felt it. What's wrong with that? Well, I think the court did say that if a passenger in a vehicle was kept in the dark about the contents of the vehicle, and I believe the court was referring to the prior trip, that he would be substantially less culpable. So when he concludes, when the court concludes that Mr. Couto was not less culpable because he'd been on a prior trip and he would have known that that trip also contained, that the car or the vehicle contained contraband, that's erroneous, because even if he doesn't rely on the prior expert testimony, he said that he had been, that the court had been in cars, he said, I'm trying to find it, but I believe the court said that he would have been able to feel that in a car, even at the age of 21, I believe were the words of the court. Yeah, as I recall what the judge said, he recounted his own prior experience driving cars, and he talks about my car has a little light, we're getting a lot of static. Is that breathing or is it the mic? Are you on a speakerphone, Mr. Turner? No, I'm not. Okay, the static seems to have gone away for now. Okay. The judge talks about, well, there's a little light that goes on when I got pressure, a pressure problem. Well, that's kind of luxury cars. I don't think it was in this truck, but then the passenger is not likely to see that little light, even if it was on. And he describes, well, you feel it. Am I doing that? You may be breathing into the telephone in some way that's causing this. I'm not sure. Try not to breathe for the next 10 minutes. Okay. Or breathe away from the phone. Yeah. So, but my problem is, and there's a problem with this question. It really may be more directed at the government. I'm having trouble seeing how the experience that the judge had, as he recounts it, tells him very much about what the passenger would have experienced. I'm distinguishing here between passenger and driver. And it suggests that if we had an earlier case in which there was expert testimony saying that the passenger would have felt it, that the government, at least in that case, thought that that was not within the common experience of ordinary people and they needed an expert. So tell me more about what the judge might have had if you take away the judge's conclusion that the passenger would have known about the drugs on the first trip because of the way the car felt. I think we also have evidence that on the first trip that the passenger was paid the same amount of money as on the second trip, which seems like an awful lot of money. Usually the passenger is the one who pays rather than the one who gets paid. So is there enough evidence in the record putting to one side drugs in the tire from the way the car behaved and so on, from which the judge could properly have concluded that he knew darn well the first time around, on the first trip, that they were transporting drugs? Is that directed to me? Yes, it is. I'm basically telling you that I'm pretty much convinced that the judge's conclusion that a passenger would have felt drugs in the tires, that's not something that I would agree he can do based on his own experience. But he's still left with the fact that the passenger was paid a lot of money on the first trip, same amount as on the second trip, much more than an ordinary passenger is paid. In fact, most passengers, in my experience, are the ones who make the payment. So what do we do with that? How do you get around that? Well, first of all, a minor distinction. He was promised to be paid. He was never paid. But he was promised, I believe, to be paid $500 on the first trip, and then he went on the second trip hoping to get an additional $500 and be paid on the first trip. I see. So he was never paid on the first. It was just a promise. Okay, I get it. That's right. And, I mean, frankly, I don't know that that was a substantial amount, enough to put him on notice that the first trip was a vehicle that contained contraband. He was actually told that first trip was to pick up cash and had no reason to believe that that first trip had the vehicle contain contraband. My client, Mr. Kuto, learned that the vehicle in which he was a passenger at the time of the arrest, he was told during the road trip that the vehicle contained hidden contraband. Okay, thank you. Okay. Maybe we'll hear from the government now. Mr. Turner, you've got about two minutes and 43 seconds on your clock. We'll hear from the government. Your Honors, going first to a point I heard from the prior argument, just to make it clear, the standard here is clear error. Going directly to your question, Judge Fletcher, I'll start with the evidence besides the tire, because I think the tire has been a little blown up here. But, first of all, I think one of the main things that the judge was looking at was the substantial amount of drugs in this case we're talking about. Mr. Turner, we can hear what you're doing. Are you moving papers around? Maybe you can mute your microphone. Okay, I'm not moving any papers around, but there might be some interference around here. Yeah, okay. Okay. I think one of the bigger things is the substantial amount of drugs. Wait a second. I understand. Judge Fletcher's question is really, really important, and we need to get to it. But didn't you agree in a plea agreement with both Cudo and Garcia that both of them were entitled to the minor role adjustment? I didn't agree in the plea agreement. The plea agreement has the clause. But you recommended it. I recommended it, yes. There was a clause that you would recommend and you did recommend. So the clause states that the defendants have the ability to appeal if their request for a minor role is not granted by the court. So on what basis did the government recommend a minor role? I recommended it. And I preface all this by saying I don't think it's ultimately relevant to what the decision is here. Well, it is to me because now you're going to answer Judge Fletcher's question to explain why they weren't entitled to a minor role because there was all this evidence, yet that's directly contrary to the position that the government took at the sentencing hearing. So I want to know on what basis do you take that position before you explain to me why you're going to respond the way you're going to respond to Judge Fletcher's question? Yes, Your Honor. The reason why I – The basis that the government took this. The basis I took it. I took it was, first of all, I think was the age of the defendants here. We have an 18- and 19-year-old defendant. They're young. They're stupid. And I met with them. I talked to them. We debriefed both of them. You know, it's a difficult – it's a significant crime. And, you know, looking at them and looking at them, I just get the feeling that these are just adolescents who just made a bad decision. You know, and the second part of it was – this is where Judge Burns and I differed on. It was that when I interviewed them, they said, you know, we didn't know that there were drugs in the first trip. Did they say they felt drugs? They said that they couldn't – they didn't notice it or they couldn't tell. Now, I will say this, that 70 pounds on your tires – and, again, this is pulling a little bit of insurance facts, but the weights on your tires are actually measured in grams. So 70 pounds is a lot of drugs. I don't know anything about this, unlike Judge Fletcher. I mean, I guess I would need to see something in the record. I wouldn't know. Yes, Your Honor. I think you would – I think, you know, just we assumed that because, you know, it would be the difference between a flat tire and a full tire. And I think everybody knows what a flat tire feels like. I mean, there's this – But how do you know that the difference with having drugs in the tire and not having drugs in the tire is the same as the difference between a flat and non-flat tire? Because it's not just the driving characters that change. It's the entire car that changes, the ride, bounces, and bumps, right? How do you know? Have you ever driven drugs with – driven a car with 70 pounds of drugs on the tire? But I've had – you haven't driven a car with drugs on it, obviously. I hope you've never driven a car with drugs. But – No, I don't think it was a facetious question. I mean, we sometimes – police get tased when they, you know – it's not beyond the pale that AUSAs would – so I don't think it was a – I took it as a – Because you had not, but it's a real question. If you haven't done it, how do you know? And, Your Honor, you know, again, this is – I accept that I'm going to have to be a little bit biased here because, you know, I have the benefit of experience and knowledge in these cases. But I've asked – we obviously have our experts in these cases to help explain to the jury. But we also have often the border protection officers themselves talk about – But these guys, that's the other strange thing in this case. They got through the border patrol, right? But the border patrol officers, when we ask for their testimony, it's when they have taken possession of the car and they're driving it between – usually between primary and secondary, right? And, you know, not in this case, but in most – In this case, didn't they get beyond secondary? And they were driving – Well, they were never stopped, right? They got past the checkpoint. But you're asking me – So that means that the border patrol didn't notice these horrendously flat tires that were on the track. Yes, Your Honor. But I think my answer is a little bit different. You guys are – I think you were asking me how I would know in these cases. Well, you asserted that the difference between a tire that doesn't have drugs in it and a tire that does have drugs in it is as discernible, as readily discernible as the difference between a fully inflated tire and a flat tire. And I asked you how you knew that. It would be similar, yes, Your Honor. And the idea is some kind of common experience, which is what Judge Burns is alluding to in the record, that there's a common experience here in this. Well, the common experience that he recounts is a flat tire. Yes. He apparently has never driven a car worth 70 pounds distributed among four tires either. And going back to the example is, you know, how do we know – we have experts. Obviously, we have an expert that does this. We also have – what I also do in these trials when we're presenting this evidence – and the usual case is, imagine a case where someone is stopped in primary for suspicion of carrying contraband. They don't know yet what's in the car, if there's anything in the car. The Customs and Border Protection officers often take control of the car if they believe that there's something in there. They drive that car a small distance between the primary area and then the secondary area, which is where they do the more thorough search of the car. In that short distance, which is usually only a couple hundred yards, if anything, many of the officers will tell me, you can tell that the car is loaded in the tires because you can feel it when you're driving down the road. If there's any little bump, it becomes exaggerated much the same way because the tires obviously are rubber. The air provides additional shock. When you don't have that additional shock, it's felt through the entire floor of the car, and it's therefore the entire – you can be a driver. It's obviously much more visible and something that's felt through the driver of the car. But I'm afraid you're making the point for the defendant here. These are guys who do this for a living. They drive themselves. They've felt it themselves. I've never driven a car with drugs in the tires. The district judge has never driven a car with drugs in the tires. I accept that this can be established by extra testimony, but what I'm having trouble with is that the judge would know from his own experience. Yes, Your Honor. Can I tell you just coincidentally? Last week I was driving my car around, and I didn't feel anything, but this yellow light was on. And I said to somebody, you know, the yellow light's on. I better take it in and see what it means. So I took it to the Jaguar dealer over there, and they said, oh, your right back tire's flat. I had no idea. I was driving it around. I had no idea. I was afraid where you were going with that. I didn't even know until the light came on. Okay. I'm glad for you. Your Honor, as I see, I'm almost out of time. Just to answer Judge Fleisher, I don't think I'm making the point for the defense, because we have experts that talk about this, but the regular customs and border protection officer who, you know, may have 20 years of experience, but also may have only two years of experience. You know, they're not making the point. But my point is, coming off of precisely what you said is, they drive the car from primary to secondary, and in driving the car, they can tell that there are drugs in the tire. In other words, they have directly experienced it. My question is, how can someone who has never directly experienced it know from his common experience that that is so? Again, I think you have to understand that this is, we're not talking about a few pounds of pressure difference. Because in your example, Judge Fleisher. Wardlock. Oh, sorry, Judge Wardlock. The light in those cars often, again, I have one of those lights, too, and I've had that happen to me. But it doesn't come on saying your tire is flat. It just has this, like, yellow warning sign that I had no idea what that meant. And that warning sign is indicative that your tire pressure is low. But how do you know it relates to the tire? It could relate to anything. I mean, I don't understand how cars work. So it can relate to anything in the car. I go back to the idea that we've, again, and I don't want to, but I understand from doing these cases that when we rotate, when you're setting up a car and the automotive technician wants to make sure it's perfectly, it's balanced so that the driver doesn't feel anything, he's making these changes in increments of ounces. You know, small, little, if you look at your tire, you have those little bars on it that are literally what balances the tire. Is there any evidence that Judge Byrne does tires? The truth is I used to do tires. That's how I earned money when I was in high school and college. So I know this, but I know it because I worked with tires. My experience with ordinary customers is they say, huh? Again, he's basing it off of his experience in driving. Again, there's a difference. Can I just say what I think the problem is? Because you talk about my experience in these cases, and Judge Byrne just talks about my experience in these cases. I sit in passing a lot, so I get a lot of these cases. I know you have a lot of these cases, but is that really right? I mean, to be taking your personal experience from these cases and then sentence, you know, in an individualized sentencing system, just using, because you've had so many of these cases and the judges had so many of these cases, that these people should be held accountable for something that may or may not be true in this case. You know, I think that I understand the reaction here, but I think that sentencing judges need, and this is represented in the Quick Take of the Case Law, they need to be able to take in as much information as possible Maybe a declaration from a tire expert. I mean, maybe something that was actual evidence. Again, I think here he's trying to use his own personal experience in driving. That said, you know, I understand my time's running out. I understand that Your Honors disagree with that. I still think that there's more than sufficient evidence in the record to support the finding that he needed. Your time is actually way up. I'm sorry, Your Honors. Mr. Turner? Just briefly, I agree that if you're going to impute knowledge based upon the feel of the tires, you have to impute their knowledge, not your own personal experience from experts you've heard or driving experience. My client was 18 years old, came from a very poor background, did not own a car of his own, so who knows how much actual time in a vehicle he's ever even spent. So I think that's what needs to be looked at, especially if you're going to deny something like a minor role in the face of the government, the government's own motion to give him a minor role. The government said, we interviewed both these defendants, took a lot more time discussing it with them than the district court judge did, and they concluded that they played a minor role because I think, as he said, they were young and stupid. So that's the type of frame of mind that we have to look at when we're going to try to impute knowledge and therefore claim that they don't deserve or that my client doesn't deserve a minor role adjustment. And with that, I'll submit. Thank you very much. Case is argued. Senator Minut. Thank you for clarifying the standard of review. Yeah. Thank you. We are adjourned. Thank you.
judges: Kozinski, Wardlaw, Fletcher